# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Elbert Dawkins, individually and on behalf of all others similarly situated, | ) ) ) | Case No.: 22-cv-3617-PKC-TAM |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| Schott NYC Corp., | ) ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO DEFENDANT SCHOTT NYC CORP.'S MOTION TO DISMISS

**STEIN SAKS, PLLC**

*/s/ Kenneth Willard*_____
Kenneth Willard, Esq.
One University Plaza, Ste. 620
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501
kwillard@steinsakslegal.com

## <u>TABLE OF CONTENTS</u>

Table of Authorities …………………………………………………….....     iii

I.     Introduction ………………………………………………….……..     1

II.    Factual Background …………………………………………………...     1

III.   Standard of Review ………………………………………………………     2

IV.    Legal Argument …………………………………………………………….     3

       A.     PLAINTIFF'S DIFFICULTIES IN NAVIGATING THE
              WEBSITE AND HER INABILITY TO SUCCESSFULLY
              OBTAIN INFORMATION ESTABLISH INJURY-IN-FACT …     3

              i.     Article III Standing in the Context of the ADA ………….     3

              ii.    Caselaw in this Jurisdiction on Article III Standing in
                     the Context of the ADA …………………………………     5

              iii.   Plaintiff Has Established All Three Elements of Article III
                     Standing in the Context of the ADA ……………………..     9

                     a.   Plaintiff Has Established Past Injury …………………..     10

                     b.   Plaintiff Has Established that it Is Reasonable to Infer
                          that Discriminatory Treatment Will Continue ………...     13

                     c.   Plaintiff Has Established Intent to Return to the
                          Website ……………………………………………..     14

                     d.   Defendant's Arguments Are without Merit and *Calcano*
                          Is Distinguishable ……………………………………     15

       B.     PLAINTIFF HAS ADEQUATELY STATED A CLAIM …………     18

       C.     PLAINTIFF'S NYCHRL CLAIMS SURVIVE ……………………     21

       D.     PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES, CIVIL
              PENALTIES AND FINES UNDER NYCHRL ……………………     23

V.     CONCLUSION ………………………………………………………….     24

i

**Table of Authorities**

**Supreme Court Opinions**

*City of Los Angeles v. Lyons*,
 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) ........................................................ 4

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555, 112 S. Ct. 2130 (1992) ...................................................................... 4

*Skinner v. Switzer*,
 562 U.S. 521, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011) ................................................. 18

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) ........................................................................ 4

**U.S. Constitution**

Article III of the U.S. Constitution ............................................................................... 1, 2, 4

**Second Circuit Opinions**

*Angeles v. Grace Prods.*,
 No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317
 (S.D.N.Y. Sep. 23, 2021) ..................................... 5, 8, 9, 11, 12, 13, 14, 15

*Bautz v. ARS Nat'l Servs.*,
 226 F. Supp. 3d 131 (E.D.N.Y. 2016) ....................................................................... 4

*Calcano v. Swarovski North America Ltd.*,
 36 F.4th 68 (2d Cir. 2022) ........................................................... 5, 6, 17, 18

*Camacho v. Vanderbilt Univ.*,
 2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019) ......................... 5, 7, 8, 11, 14, 17

*Carter v. HealthPort Techs., LLC*,
 822 F.3d 47 (2d Cir. 2016) .......................................................................... 3, 23

*Chalas v. Barlean's Organic Oils, LLC*,
 No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816
 (S.D.N.Y. Nov. 22, 2022) ...................................... 9, 10, 11, 12, 13

*Cooper v. U.S. Postal Serv.*,
 577 F.3d 479 (2d Cir. 2009) ......................................................................... 4

*Gonzalez v. Bahar*,
 No. 19-CV-575 (LDH) (RER), 2019 U.S. Dist. LEXIS 58567
 (E.D.N.Y. Apr. 3, 2019) ....................................................................... 17

*Grecco v. Age Fotostock Am., Inc.*,
 No. 21-cv-423 (JSR), 2021 U.S. Dist. LEXIS 144023 (S.D.N.Y. Aug. 2, 2021) ............... 16

*Harry v. Total Gas & Power N. Am., Inc.*,

889 F.3d 104 (2d Cir. 2018) .................................................................................................. 5

*Jaquez v. Dermpoint, Inc.*,
No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067
(S.D.N.Y. May 20, 2021) ............................................................................................. 20, 21

*Katz v. Donna Karan Co., L.L.C.*,
872 F.3d 114 (2d Cir. 2017) ................................................................................................... 3

*Kreisler v. Second Ave. Diner Corp.*,
731 F.3d 184 (2d Cir. 2013) ............................................................................................... 4, 5

*Laufer v. Laxmi & Sons, LLC*,
No. 1:19-CV-1501 (BKS/ML), 2020 U.S. Dist. LEXIS 216752
(N.D.N.Y. Nov. 19, 2020) ..................................................................................................... 4

*Maciel v. BNW of N. Am. LLC*,
No. CV 20-458 (JS) (AKT), 2021 U.S. Dist. LEXIS 34311
(E.D.N.Y. Feb. 23, 2021) ....................................................................................................... 3

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ................................................................................................... 3

*Paguada v. YieldStreet Inc.*,
2021 U.S. Dist. LEXIS 202311 (S.D.N.Y. Oct. 20, 2021) ...................................... 19, 20, 21

*Panarra v. HTC Corp.*,
No. 6:20-CV-6991-FPG,2022 U.S. Dist. LEXIS 69951
(W.D.N.Y. Apr. 15, 2022) .................................................................................................... 18

*Sanchez v. NutCo, Inc.*,
No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247
(S.D.N.Y. Mar. 22, 2022) ................................................................................. 7, 13, 14, 16

*Tavarez v. Moo Organic Chocolates, LLC*,
No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720
(S.D.N.Y. Nov. 21, 2022) ........................................................ 6, 7, 11, 12, 13, 14, 15, 16

*Thompson v. Equifax Info. Servs. LLC*,
No. 20-CV-6101 (RPK) (ST), 2022 U.S. Dist. LEXIS 32935
(E.D.N.Y. Feb. 24, 2022) ....................................................................................................... 5

*Thorne v. Formula 1 Motorsports, Inc.*,
No. 19-CV-1077,2019 U.S. Dist. LEXIS 220080, 2019 WL 6916098
(S.D.N.Y. Dec. 19, 2019) ............................................................................................... 20, 21

*Walters v. Fischer Skis U.S., LLC*,
No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148
(N.D.N.Y. Aug. 10, 2022) ............................................................... 9, 11-12, 13, 14, 16

*Wu v. Jensen-Lewis Co.*,
345 F. Supp. 3d 438 (S.D.N.Y. 2018) ................................................................................. 20

**Federal Court Opinions**

*Suntrust Mortg. v. K. Hovnanian Am. Mortg.*,
  Civil Action No. 3:12cv317-JAG, 2012 U.S. Dist. LEXIS 202715
  (E.D. Va. July 9, 2012) ............................................................... 18-19

**United States Code**

42 U.S.C. § 12182 ............................................................................... 1

**State Cases**

*Cabrera v. City of N.Y.*,
  2014 NY Slip Op 30533(U) (Sup. Ct.) .......................................... 21

*Chauca v. Abraham*,
  2017 NY Slip Op 08158, 30 N.Y.3d 325, 67 N.Y.S.3d 85, 89 N.E.3d 475 ................................ 23, 24

*Pustilnik v. Battery Park City Auth.*,
  2021 NY Slip Op 21087, 71 Misc. 3d 1058, 147 N.Y.S.3d 357 (Sup. Ct.) ................................ 21, 22

*Vig v NY Hairspray Co., L.P.*,
  67 AD3d 140, 885 N.Y.S.2d 74 [1st Dept 2009] .......................... 21

*Williams v New York City Hous. Auth.*,
  61 AD3d 62, 872 N.Y.S.2d 27 [1st Dept 2009] ............................ 21

**State Statutes**

§ 8-130 ................................................................................................ 23
§§ 1, 7 ................................................................................................ 23

**Rules**

Rule 8 ................................................................................................ 18
Rule 12 ............................................................................................. 3, 19

**Other**

N.Y.C. Admin. Code § 8-101 ............................................................ 1
N.Y.C. Administrative Code § 8-130 ............................................... 23
N.Y.C. Administrative Code § 8-502 ............................................ 24, 25

## I.    <u>INTRODUCTION</u>

Defendant Schott NYC Corp. ("Schott") seeks to dismiss of this case brought Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, on several different grounds.  Defendant argues that Plaintiff Elbert Dawkins ("Dawkins") does not have standing to sue under Article III of the U.S. Constitution because Plaintiff has not plausibly alleged that he suffered any past injury, based on the generalized allegations of access barriers in the Complaint, nor has he plausibly alleged an intent to return to the subject website, www.schottnyc.com (the "Website").  Defendant further argues that Plaintiff has not stated a claim, that this Court cannot exercise supplemental jurisdiction over Plaintiffs' NYCHRL claims, and that Plaintiff cannot plead punitive damages based on willfulness under the NYCHRL.  As will be discussed further below, these arguments are without merit.

## II.    <u>FACTUAL BACKGROUND</u>

On April 2, 2022 and April 14, 2022, Plaintiff visited the Website and attempted to navigate it using NonVisual Desktop Access ("NVDA") screen-reading software.  *See* Plaintiff Elbert Dawkins Affidavit ("Dawkins Affidavit"), ₱₱ 4, 9; *see also* Dkt. # 1, ₱₱ 23, 24.  Plaintiff is interested in the Website because he is interested in learning more about the jackets for sale on the Website, and is specifically looking to purchase the classic perfecto leather jacket because of its iconic look.  *See* Dawkins Affidavit, ₱₱ 6, 7, 8.  Plaintiff first found out about the Website through a Vice news article entitled, "The First Wild One."  *See Id.* at ₱ 5.  Plaintiff remains interested in the Website because of his specific interest in purchasing the classic perfecto leather jacket, because he wants to know more about the products offered for sale on the Website and is interested in promotional offers on the Website.  *See Id.* at ₱ 11.

While he was visiting the Website, Plaintiff encountered several access barriers that prevented him from enjoying the Website as sighted users do. *See* Dkt. # 1, ¶¶ 24, 29, 32; *see also* Dawkins Affidavit, ¶ 10. Specifically, Plaintiff encountered a host of broken links that prevented him from navigating away from dead-ends in the virtual world; missing alt. text that failed to provide any description of graphical images; missing label or title elements that failed to describe webpages; and duplicate title elements that failed to distinguish between webpages. *See* Dkt. # 1, ¶¶ 25, 26, 27, 28.

Additionally, when he was visiting the Website, Plaintiff could not access the submenus on the Website because they were inaccessible with a keyboard. Dawkins Affidavit, ¶ 10a. Plaintiff also had trouble browsing items for sale because they were mislabeled and read out to Plaintiff as letters and numbers which Plaintiff found frustrating. *Id.* at ¶ 10b. Plaintiff was also unable to access pricing and could not determine type, size and fit for specific items using his keyboard. *Id.* at ¶¶ 10c., 10d. When Plaintiff attempted to add a jacket to his shopping cart, the shopping cart contained a drop-down menu that did not announce itself as in a collapsed or expanded state, so Plaintiff was unable to check out the jacket. *Id.* at ¶ 10e. Finally, Plaintiff was unable to use the telephone number provided on the Website in order to complete his purchase because the phone number was merely provided in plaint text and was therefore inaccessible to Plaintiff using his screen reader. *Id.* at ¶ 10f.

Plaintiff intends to return to the Website because he is interested in learning about products for sale on the Website, specifically including the classic perfecto leather jacket, and he is also interested in learning more about promotional offers on the Website. Dawkins Affidavit, ¶ 11.

## III.   STANDARD OF REVIEW

2

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)(citing Fed. R. Civ. P. 12(b)(1)). While the standard of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim are inherently similar," a court resolving a Rule 12(b)(1) motion to dismiss may, unlike the resolution of a Rule 12(b)(6) motion, "refer to evidence outside the pleadings." *Maciel v. BNW of N. Am. LLC*, No. CV 20-458 (JS) (AKT), 2021 U.S. Dist. LEXIS 34311, at *19 (E.D.N.Y. Feb. 23, 2021)(citing *Makarova*, 201 F.3d at 113)(internal citations omitted))(other citations omitted). Moreover, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (internal citations omitted).

The Second Circuit draws a distinction between two types of Rule 12(b)(1) motions challenging subject matter jurisdiction: facial challenges and fact-based challenges. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). A facial challenge is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. Under a facial challenge, a court must "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." 822 F.3d at 56 (citations and internal quotations omitted). In order to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (citation omitted).

## IV.  LEGAL ARGUMENT

### A.  PLAINTIFF'S DIFFICULTIES IN NAVIGATING THE WEBSITE AND HIS INABILITY TO SUCCESSFULLY OBTAIN INFORMATION ESTABLISH INJURY-IN-FACT

#### i.  Article III Standing in the Context of the ADA

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies," which is rooted in the concept of standing. *See Bautz v. ARS Nat'l Servs.*, 226 F. Supp. 3d 131, 137 (E.D.N.Y. 2016).  In order to have standing to sue in federal court, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009).  The injury-in-fact must be "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)(quoting *Lujan*, 504 U.S. at 560 n.1).  "To be 'concrete' an injury 'must actually exist': the injury must be 'real' and not 'abstract.'" *Laufer v. Laxmi & Sons, LLC*, No. 1:19-CV-1501 (BKS/ML), 2020 U.S. Dist. LEXIS 216752, at *3-4 (N.D.N.Y. Nov. 19, 2020)(quoting *Spokeo*, 136 S. Ct. at 1548).

In order to establish standing for injunctive relief, a plaintiff has the additional burden of showing that she "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged … conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)(internal quotation marks and citation omitted); *see Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013)("Plaintiffs seeking injunctive relief must also prove that the identified injury in fact presents a 'real and immediate threat of repeated injury.')(quoting *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)).

In the ADA context, the Second Circuit has found standing "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the

proximity of defendants' restaurants to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). "To satisfy standing in ADA website cases specifically, courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the website, the specific barriers that prevented them from gaining access, and how they intend to utilize the website in the future." *Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *3-4 (citing cases).

"In reviewing standing under the ADA, a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the Act." *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, at *25 (S.D.N.Y. Dec. 4, 2019). The threshold for Constitutional standing is appreciably lower on a 12(b)(1) motion than it is, for example, on a motion under 12(b)(6). *See Thompson v. Equifax Info. Servs. LLC*, No. 20-CV-6101 (RPK) (ST), 2022 U.S. Dist. LEXIS 32935, at *13-14 (E.D.N.Y. Feb. 24, 2022)("Yet, here, we are at the pleading stage where general factual allegations of injury are sufficient to plead standing."); *see also Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018)("It is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action.").

### ii.  Caselaw in this Jurisdiction on Article III Standing in the Context of the ADA

The Second Circuit's most recent pronouncement on ADA standing is *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022). Consolidating a series of ADA cases for appeal, the Circuit Court found that the plaintiffs had not established standing based on several deficiencies found in their complaints. *See Calcano*, 36 F.4th at 71-73, 75. Specifically, the Circuit Court found the allegations in the complaints merely parroted the allegations in *Kreisler*

where the court found standing, and that many of the specific allegations in the complaints surrounding intent to return were problematic because they were rife with editorial errors and implausible allegations. *See Calcano*, 36 F.4th at 76 (returning to a Kohl's store that doesn't exist, a Banana Republic store for food, and visiting a store in the Columbus Circle, Manhattan from the Bronx in order to purchase a gift card with no demonstrated interest in). 36 F.4th at 77. The court found this "Mad-Libs style" of complaint drafting implausible, which was only further undermined by the serial nature of the litigation. *See Id.* at 76-77 ("'[J]udicial experience and common sense' suggest that the errors, oddities, and omissions in the complaints are a result of their mass production, and they render each Plaintiff's cookie-cutter assertion of standing implausible."). The Circuit Court further noted that "all of these plans depend on the availability of braille gift cards even though Plaintiffs never explain why they want those cards in the first place." *Id.* at 77. Finally, the plaintiffs "provide *any* details about their past visits or the frequency of such visits." *Id.* at 76 (emphasis in original).

Even after *Calcano*, however, courts in this jurisdiction continue to find standing in standalone website cases. For example, the court in *Tavarez v. Moo Organic Chocolates, LLC*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 (S.D.N.Y. Nov. 21, 2022) found that the plaintiff established standing where he alleged "three dates on which Plaintiff accessed Defendant's website, the specific product Plaintiff allegedly seeks to buy, his habit of consuming chocolate [offered for sale on the website], and characteristics of Defendant's Almond Mini Bars that he finds attractive." *Tavarez*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *9-10. The court distinguished these allegations from *Calcano*, where the plaintiffs "'fail[ed] to provide *any* details about [plaintiffs'] past visits' to defendants' public accommodations, the frequency of such visits, which items they purchased, or why they wanted to purchase certain items

from the defendants." No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *10. The court also found that the plaintiffs had adequately alleged past injury based on allegations that he visited the website on three separate dates and encountered certain specified difficulties. *Id.* at *7. Finally, despite the court's misgivings about the potential problems created with serial litigation, mentioned in a footnote with a reference to *Calcano*, the court found that the plaintiff had adequately alleged intent to return with a demonstrated interested in Almonds Mini Bars and his habit of eating chocolate. *See Id.* at *7-8, *8 n.6. Rather than dismiss the case, the court ordered jurisdictional discovery. *See Id.* at *11.

*Tavarez* relied on *Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022). That court found standing where the plaintiff alleged that he was "unable to purchase pistachio nuts and other snack foods, take advantage of discounts and promotions, and understand different product details — because of barriers on the Website." *Sanchez*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 at *5. The court found past injury based on allegations of not being able to "ascertain the price or other details of products on the Website because the Website was not compatible with his screen-reading software, and the Website provided no indication when an item was successfully added to his online cart." No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 at *5. Finally, as *Tavarez* did, the *Sanchez* court found that it was reasonable to infer that the violations would continue based on the plaintiff's past articulated visits to the website and that it had not been remediated. *See Id.* at *7; *see also Tavarez*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *8-9

*Sanchez* in turn relied on *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202 (S.D.N.Y. Dec. 4, 2019). That court found that the plaintiff had adequately pled injury where he attempted to learn more online about the educational institution he planned on visiting to see if he

wanted to attend university there, but could not because of various access barriers on the website. *See Camacho*, 2019 U.S. Dist. LEXIS 209202 at *26-29.  The court found past injury based on allegations that the website's "navigation tabs were incompatible with his screen-reading software, and [that plaintiff was] unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software." *See* 2019 U.S. Dist. LEXIS 209202 at *26. The court further found a reasonable inference of returning to the website based on past visits to the website and the plaintiff's inability to navigate it using screen reading software. *See Id.* at *26-27.  Finally, the court found that the plaintiff had adequately alleged intent to return based on his desire to learn more about the university by visiting its online website. *See Id.* at *28-29.

The court rejected the defendant's arguments that filing over 50 other similar ADA lawsuits against universities undermined the plaintiff's intent to return because he could not engage in such "an expansive college tour."   *See Camacho*, 2019 U.S. Dist. LEXIS 209202 at *29-32 (noting "there is 'nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical.'" ).  Noting that the question was not whether the plaintiff intended to return to each of the university campuses, but to their websites, the court concluded, "The Court does not doubt that it would be plausible for Plaintiff to visit the websites of all 50 schools, if they were accessible." 2019 U.S. Dist. LEXIS 209202 at *30-31.

*Tavarez* also relied on a case in which this firm served as counsel, *Angeles v. Grace Prods.*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 (S.D.N.Y. Sep. 23, 2021).  That court found standing where the plaintiff alleged an approximate date of when she visited the website, October 2020, that she was interested in purchasing the chemical-free beauty products offered for sale on the website, and that she encountered various barriers to access while visiting the website, including that "1) her screen-reading software was unable to discern which products were on the

screen and distinguish between different screens on the website due to the failure of the website to adequately describe its content and (2) she encountered problems with broken links that prevented her from using the screen reader to return to her search." *Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *4-5. The court specifically rejected the idea that the plaintiff had to express interest in a particular product to satisfy Article III, reasoning, "The central allegation in her complaint is that she went to Defendant's website with the intent of making a purchase but was not able to properly navigate the different pages of Defendant's website, nor was she able to differentiate between Defendant's various products in order to decide which one, if any, she wanted to purchase." No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *4-5.

Other courts follow the same reasoning where the facts, as here, evince standing. *See Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148, at *9-11 (N.D.N.Y. Aug. 10, 2022)(finding standing where the plaintiff alleged past injury by identifying specific access barriers on the website in the "'Remember' and 'Compare' buttons, the cart confirmation window, and the 'Freeride' product page," and demonstrating an intent to return "to research and potentially purchase products and explore the services [offered] … in advance of his next ski trip."); *see also Chalas v. Barlean's Organic Oils, LLC*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816, at *5-9 (S.D.N.Y. Nov. 22, 2022)(finding standing where the plaintiff alleged various access barriers in detail and demonstrated an interest in the stomach repair supplements offered for sale on the website for her cousin's personal needs).

### iii. Plaintiff Has Established All Three Elements of Article III Standing in the Context of the ADA

Defendant offers no contravening evidence of its own to undermine Plaintiff's standing, and limits its 12(b)(1) motion to a facial challenge of the allegations of the Complaint. Those

allegations, as well as Plaintiff's Affidavit, establish all three elements of Article III standing in the context of injunctive relief under the ADA.

### a. **Plaintiff Has Established Past Injury**

First, Plaintiff's allegations and supplemental affidavit establish past injury.  Plaintiff alleges that while he was visiting the Website, Plaintiff encountered several access barriers that prevented him from enjoying the Website as sighted users do.  *See* Dkt. # 1, ¶¶ 24, 29, 32; *see also* Dawkins Affidavit, ¶ 10.  Specifically, Plaintiff encountered a host of broken links that prevented him from navigating away from dead-ends in the virtual world; missing alt. text that failed to provide any description of graphical images; missing label or title elements that failed to describe webpages; and duplicate title elements that failed to distinguish between webpages.  *See* Dkt. # 1, ¶¶ 25, 26, 27, 28.

Plaintiff bolsters these allegations with his Affidavit.  Plaintiff explains that he "was not able to obtain the information that I needed to review the products for sale and complete the purchase on the Website," and then goes on to explain each of the specific barriers that he encountered.  *See* Dawkins Affidavit, ¶ 10.  For example, Plaintiff encountered difficulties navigating submenus because they would not interface with his keyboard.  *Id.* at ¶ 10a.  Plaintiff also had trouble browsing various items for sale because they were mislabeled and were read out to Plaintiff using his screen reader as letters and numbers, which Plaintiff found frustrating.  *Id.* at ¶ 10b.  Plaintiff also could not sort various products using his keyboard and was unable to determine type, size and fit, and could not determine pricing using either his keyboard or his screen reader.  *Id.* at ¶¶ 10c, d.  When attempting to add a jacket to the shopping cart, Plaintiff was unable to check out because the drop-down menu associated with the shopping cart did not announce whether it was in a collapsed or expanded state.  *Id.* at ¶ 10e.  Finally, Plaintiff was unable to use

the telephone number provided on the Website in order to complete his purchase because the phone number was merely provided in plaint text and was therefore inaccessible to Plaintiff using his screen reader. *Id.* at ¶ 10f.

Plaintiff's specific facts concerning the difficulties associated with navigating submenus, browsing items for sale, sorting products by type, size and fit, determining pricing, adding a jacket to the shopping court and the difficulties associated with purchasing the jacket due to the problems with the provided submenu, and finally, Plaintiff's difficulty in obtaining Defendant's phone number to complete a purchase, sufficiently establish past injury under the ADA. *See Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *4-5 (finding past injury where the plaintiff explained in a supplemental affidavit that "1) her screen-reading software was unable to discern which products were on the screen and distinguish between different screens on the website due to the failure of the website to adequately describe its content and (2) she encountered problems with broken links that prevented her from using the screen reader to return to her search."); *see also Tavarez*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *7 (plaintiff established past injury by alleging that he encountered "certain difficulties" in navigating the website, but failing to specify which ones); *see also Camacho*, 2019 U.S. Dist. LEXIS 209202 at *26 (plaintiff established past injury because the website's "navigation tabs were incompatible with his screen-reading software" and plaintiff was "unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software."); *see also Tavarez*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *7 (plaintiff established past injury by alleging that he encountered "certain difficulties" in navigating the website, but failing to specify which ones); *see also Walters*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148 at *9-11 (plaintiff adequately alleged past injury by identifying specific access barriers on

the website in the "'Remember' and 'Compare' buttons, the cart confirmation window, and the 'Freeride' product page."); *see also Chalas*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816 at *6 (plaintiff adequately alleged past injury by alleging various access barriers in detail, specifically, that "the screen reader failed to inform Plaintiff about whether a selected item had been added to her shopping cart, did not provide Plaintiff with the ability to pay for items in her cart; and failed to read various pieces of information on the website.).

Plaintiff has also explained that he visited the Website on two separate occasions. *See* Dawkins Affidavit, ⁋ 9 (explaining that he visited the Website on April 2, 2022 and April 14, 2022). As the caselaw above demonstrates, this is a critical piece of the puzzle in filling out the larger picture of Plaintiff's past injury. *See Tavarez*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *7 (finding past injury where the plaintiff alleged three separate dates when he visited the website); *see also Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *4-5 (finding past injury based in part on allegations that plaintiff visited the website in October 2020).

Defendant makes various arguments in response that either have no application or are distinguishable from the present case, especially considering the facts set forth in Plaintiff's Affidavit. Defendant argues, for example, that Plaintiff has failed to articulate how any of these alleged access barriers harmed him, but this is plainly belied by the allegations themselves, as well as Plaintiff's supplemental Affidavit. *See* Dkt. # 1, ⁋ 25 (unable to differentiate products due to missing alt. text); *see also Id.* at ⁋ 26 (missing label elements leading to inability to determine meaning or purpose of webpage); *see also Id.* at ⁋ 27 (identical title elements leading to inability to distinguish between webpages); *see also Id.* at ⁋ 28 (broken links lead to dead ends in page navigation); *see also* Dawkins Affidavit, ⁋ 10a (unable to navigate submenus because they are not

interactive with Plaintiff's keyboard); *see also Id.* at ¶ 10b. (unable to browse items for sale because they were mislabeled and read out as numbers and letters); *see also Id.* at ¶ 10c. (unable to sort items for sale using keyboard and therefore unable to determine size, type and fit of various different products); *see also Id.* at ¶ 10d. (unable to determine pricing with keyboard or screen reader); *see also Id.* at ¶ 10e (unable to purchase a jacket after adding it to the shopping cart because the submenu provided with the shopping cart did not announce itself in a collapsed or expanded state); *see also Id.* at ¶ 10f. (unable to find phone number to call Defendant directly to complete a purchase because the phone number was provided in plain text and therefore inaccessible to screen reader).  Caselaw has consistently held similar problems to establish past injury.  *See Walters*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148 at *9-11; *see also Chalas*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816 at *6.

### b.  Plaintiff Has Established that it Is Reasonable to Infer that Discriminatory Treatment Will Continue

Second, it is reasonable to infer that the violations on the Website will continue based on Plaintiff's past visits and the continued compliance problems with the Website, which Defendant does not contest.  *See* Dkt. # 1, ¶¶ 24, 25, 26, 27, 28, 29; *see also* Dawkins Affidavit, ¶¶ 9, 10; *see also Tavarez*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *8-9 ("reasonable to infer that this discriminatory treatment will continue because Plaintiff has visited Defendant's website on three occasions, and its accessibility barriers have not been addressed as of September 8, 2022."); *see also Sanchez*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 at *7 (reasonable to infer discriminatory treatment would continue based on allegations that the plaintiff "unsuccessfully tried to navigate the Website, that the site's barriers deter him from visiting the Website in the future, and that he intends to visit the site again in the future when the barriers are cured," noting that the plaintiff "even makes note of his particular interest in pistachio nuts.").

### c. **Plaintiff Has Established Intent to Return to the Website**

Most importantly, Plaintiff has established an intent to return based on the information that is provided in Plaintiff's Affidavit. Specifically, Plaintiff learned about Defendant's Website from a Vice news article entitled, "The First Wild One." *See* Dawkins Affidavit, ¶ 5. Intrigued, Plaintiff decided to visit the Website and, while there, wanted to learn more about the products for sale on the Website. *See Id.* at ¶¶ 6, 7, 8. He is generally interested in Defendant's jackets offered for sale on the Website and has a particular interest in the classic perfecto leather jacket "because of the iconic look." *See Id.* Finally, Plaintiff states in his Affidavit that he wishes to return to the Website should it ever become remediated because of his interested in the Website's products for sale, more specifically the classic perfecto leather jacket, and because he wants to know more about any promotional offers the Website may have. *See Id.* ¶ 11.

This is more than enough to satisfy the basic pleading requirements establishing intent to return under the ADA. *See Tavarez*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *9-10 (habit of eating chocolate and interest in Almond Mini Bars); *see also Walters*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148 at *9-11 (demonstrating an intent to return "to research and potentially purchase products and explore the services [offered] … in advance of his next ski trip."); *see also Sanchez*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 at *5 (interest in "pistachio nuts and other snack foods, tak[ing] advantage of discounts and promotions, and understand[ing] different product details… ."); *see also Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *4-5 (interest in chemical-free beauty products).

Moreover, Plaintiff's allegations that she is interested in *learning more about* Defendant's products while visiting the Website are entirely consistent with caselaw. *See Camacho*, 2019 U.S. Dist. LEXIS 209202 at *26-29; *see also Walters*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148 at *9-11. Having demonstrated an interest in Original Ben's Pants, it is reasonable

to infer that Plaintiff's interest would broaden to include other products offered by Defendant on the Website because of the famed durability of the Ben Davis brand. *See infra*, at 16.

### d.  **Defendant's Arguments Are without Merit and *Calcano* Is Distinguishable**

Defendant's arguments regarding the generalized allegations of the Complaint establishing past injury and intent to return, *see* Dkt. # 18, at 12 (noting Plaintiff "does not plead any specific intent to return," "does not plead the dates of past visits to the site," "does not identify any products he intends to buy, or is even considering buying, that the Schott NYC Corp. sells," and does not "plead why he would wait for some indeterminate time in the future to obtain these services *from defendant*…")(emphasis in original), are specifically addressed by the Dawkins Affidavit. *See* Dawkins Affidavit, ¶¶ 6-11 (explaining in detail the past access barriers he encountered, the trouble it gave him, and, apart from being interested in buying jackets, expressing a specific interest in the classic perfecto leather jacket "because of the iconic look" and any promotional offers the Website may have).

Moreover, nothing under Article III requires a plaintiff to show a particularized interest in a defendant's unique products in order to prove intent to return. *See Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *4-5; *see also Tavarez*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *8, n.6 ("The Court does not intend to suggest that level of specificity is necessarily required to allege standing adequately in every ADA case."). Indeed, the *Tavarez* court noted several pages of chocolate bar retailers that showed up in a Google search before ever getting to Defendant's website, and yet the court found Article III standing at the pleading stage. No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *8, n.6, *11.

Nevertheless, to the extent that the Complaint was lacking in this respect, Plaintiff's Affidavit fills in the gaps by showing a specific interest Original Ben's Pants because of their durability. *See* Dawkins Affidavit, ¶¶ 6, 7, 8. This is consistent with caselaw finding standing.

*See Tavarez*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *9-10; *see also Walters*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148 at *9-11; *see also Sanchez*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 at *5.

Defendant's argument that Plaintiff cannot establish a plausible intent to return because Defendant's products are not all that distinguishable from the vast array of clothing retailers available on the internet is tinged with not a little irony. The Website is all too happy to flaunt the unique nature of Defendant's products and the unique history of the Schott's brand that makes it stand out from the rest of the pack, features that Plaintiff keys in on in his desire to purchase Defendant's products. *See e.g.* https://www.schottnyc.com/about.cfm[1] last visited December 15, 2022 ("Schott's heritage is a true-blue, real-deal, piece of Americana. The iconic styles produced by hand for over 100 years have become infused in American culture and have served as battle flags for the American spirit."); *see also Id.* (explaining in detail the proud history associated with the Schott's brand, including its exploits in the motorcycle market when the vehicle was first introduced in 1928, where the "Perfecto ® [line of leather jackets] was [considered] durable, rugged and immediately embraced;" and also explaining that the "Schott Perfecto®" featured in the movie "The Wild Ones" with Marlon Brando and that "the Perfecto® was catapulted to the height of its popularity when a love for speed ended the life of the quintessential hoodlum [James Dean]."). Given the iconic history and the clear link of rebelliousness steeped in American culture that is associated with the Schott brand, it is not hard to imagine why Plaintiff would be as interested as he is in the classic perfecto leather jacket. Defendant's casual reference to "other retailers" hardly does justice to this specialized product.

---

[1] The Court may take judicial notice of this and other webpages. *See Grecco v. Age Fotostock Am., Inc.*, No. 21-cv-423 (JSR), 2021 U.S. Dist. LEXIS 144023, at *7 (S.D.N.Y. Aug. 2, 2021)("At the motion-to-dismiss stage, 'a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute.'")(citation omitted). The contents of these pages are not in dispute.

*Calcano*, importantly, is distinguishable.   The plaintiffs in *Calcano* lived in different boroughs (*e.g.* Manhattan and the Bronx), compelling the Circuit Court to express serious doubts about the likelihood of making an interborough trip for a single gift card, which the plaintiffs had alleged no particularized interest in.  36 F.4th at 76-77.  By contrast, this case does not involve any physical location, so the Circuit Court's concerns about interborough travel do not apply.   Courts in this jurisdiction have specifically distinguished the convenience of online retailing from the inherent difficulties associated with returning to a physical location.  *See Camacho*, 2019 U.S. Dist. LEXIS 209202 at *31 ("The Court does not doubt that it would be plausible for Plaintiff to visit the websites of all 50 schools, if they were accessible."); *see also Gonzalez v. Bahar*, No. 19-CV-575 (LDH) (RER), 2019 U.S. Dist. LEXIS 58567 at *6-8 (E.D.N.Y. Apr. 3, 2019)(finding that the plaintiff's "desire to return to the website is especially plausible because this action can be completed by a few keystrokes, without cost, and at any time. Unlike the plaintiffs in *Lujan*, [the plaintiff] is not alleging an intent to return to a physical location, let alone a distant one.").

Therefore, Defendant's arguments that the sheer availability of online websites cuts against Plaintiff's intent to return to the Website is somewhat puzzling in this respect.   Far from undermining Plaintiff' intent, the ease with which Plaintiff can return to the Website with just a few keystrokes only provides further support for Plaintiff's intent to return.  *See Camacho*, 2019 U.S. Dist. LEXIS 209202 at *31; *see also Gonzalez v. Bahar*, No. 19-CV-575 (LDH) (RER), 2019 U.S. Dist. LEXIS 58567 at *6-8.  This is to be specifically contrasted with *Calcano*, which again harped on the fact that interborough travel for gift cards (where not even the slightly inkling of interest had been alleged) was considered to be too problematic geographically.  *See* 36 F.4th at 76-77.  No such geographic barriers exist here.  So for Defendant to rely on *Calcano*, but then to

17

argue that the ubiquity of the internet cuts against Plaintiff's intent to return, is confounding to say the least.

Moreover, the plaintiffs in *Calcano* had failed to "provide *any* details about their past visits or the frequency of such visits," and had no demonstrated interest in gift cards. *See Calcano*, 36 F.4th at 76-77. By contrast, Plaintiff has supplied ample reason to conclude that he has a genuine interest in the Website, *to wit*, learning more about the products for sale including jackets, having a specific interest in the classic perfecto leather jacket because of its iconic look, and learning more about promotional offers. *See supra*, at 14-15. Finally, the "Mad-Libs style" of drafting that *Calcano* complained of is nowhere present in the Complaint, and involved the consideration of consolidated cases for purposes of appeal.

## B. PLAINTIFF HAS ADEQUATELY STATED A CLAIM

Defendant argues that Plaintiff has failed to state a claim, but nowhere in its briefing does it even cite any of the basic elements of an ADA claim. *See Panarra v. HTC Corp.*, No. 6:20-CV-6991-FPG, 2022 U.S. Dist. LEXIS 69951, at *6 (W.D.N.Y. Apr. 15, 2022)("To state a claim under that section, a plaintiff must show that '(1) he or she is disabled within the meaning of the ADA; (2) defendants own, lease, or operate a place of public accommodation; and (3) defendants discriminated against him or her by denying him or her a full and equal opportunity to enjoy the services defendants provide.'"). Rather, Defendant repackages its standing challenges in the guise of a Rule 8(a)(2) challenge.

Courts have not been receptive to these challenges, however. *See Skinner v. Switzer*, 562 U.S. 521, 530, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011)("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."); s*ee also Suntrust Mortg. v. K. Hovnanian Am. Mortg.*, Civil

Action No. 3:12cv317-JAG, 2012 U.S. Dist. LEXIS 202715, at *3 (E.D. Va. July 9, 2012)(rejecting the defendant's argument that "the entire suit should be dismissed for lack of damages and, thus, lack of standing" because the "argument confuses the standing doctrine and misapprehends the purpose of a Rule 12(b)(6) motion.").

Plaintiff's Complaint and supplemental Affidavit amply demonstrate that Plaintiff has suffered an injury-in-fact by showing repeated past injuries in the form of access barriers to the Website. *See supra*, at 10-13. Based on her past issues with the Website and the Website's continuing compliance problems, which Defendant does not contest, it is reasonable to infer that those violations will continue. *See supra*, at 13. Finally, Plaintiff has a demonstrated interest in the products offered on the Website. *See supra*, at 14-15. Plaintiff has standing.

To the extent that Defendant is attempting to address any of the above pleading deficiencies and repackage them as a challenge on the merits, as explained above, Defendant has failed to cite to a single element that Defendant is challenging as inadequately pleaded in Plaintiff's Complaint. Rather, Defendant makes a generalized argument, completely devoid of any citations to caselaw that would support that argument. A number of courts in this jurisdiction, however, have upheld similar claims, holding that they adequately stated claims under Rule 12(b)(6).

*Paguada v. YieldStreet Inc.*, 2021 U.S. Dist. LEXIS 202311 (S.D.N.Y. Oct. 20, 2021) is particularly on point. Assuming it addresses Defendant's challenge (which can only be presumed), the court explained in response to a similar argument,

> Defendant argues that the Complaint does not plead that Defendant discriminated against Plaintiff by denying him a full and equal opportunity to access the Website and relatedly, enjoy Defendant's services. Defendant argues that the alleged technical barriers Plaintiff encountered amount to mere "foot faults," rather than violations of the ADA that prevented Plaintiff's access of the Website. This argument is unpersuasive. At the pleading stage, the Complaint's allegations that Plaintiff encountered technical barriers like a lack of page regions or landmarks, skipped heading levels, inaccessible PDF downloads and links that screen reading

software could not differentiate are sufficient to support an ADA claim. *See Jaquez*, 2021 U.S. Dist. LEXIS 96067, 2021 WL 2012512, at *2 (finding that the complaint stated an ADA website claim where it alleged the subject website "fails to describe the contents of graphical images, properly label title[s], and distinguish one page from another, and that it contains multiple broken links and inaccurate headings") (internal quotation marks omitted).

*Paguada*, 2021 U.S. Dist. LEXIS 202311 at *11.

*Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y. May 20, 2021), relied on by *Paguada*, rejected an identical argument based on largely identical allegations (and similar to the allegations of the Complaint). *Jaquez*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 at *4-5. The court explained,

A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, *Iqbal*, 556 U.S. at 678 (internal citation omitted), and the facts Jaquez does provide suffice to meet the pleading standard. Jaquez alleges, for example, that Dermpoint's website fails to "describe the contents of graphical images," "properly label title[s]," and "distinguish one page from another," and that it contains "multiple broken links" and inaccurate headings. (AC ¶ 25.) Jaquez also alleges that the website does not provide information about image color to the screen-reading software, that individuals using that software are unable to add items to their online shopping cart, and that the website's accessibility icon is hard to find. (AC ¶ 26.) Taken as true, these allegations plausibly show that Dermpoint discriminated against Jaquez by denying him a full and equal opportunity to use its website. Indeed, courts in the Second Circuit have regularly found similar allegations enough to satisfy the pleading standard. *See, e.g., Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077, 2019 U.S. Dist. LEXIS 220080, 2019 WL 6916098, at *3 (S.D.N.Y. Dec. 19, 2019) (holding that allegations that a website "fail[ed] to provide alternative text for images, use[d] empty links containing no text, and use[d] redundant, adjacent links" sufficed to state a plausible claim for relief); *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 443 (S.D.N.Y. 2018) (same).

*Jaquez*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 at *4-5.

Here, Plaintiff has alleged that he was unable to enjoy the Website as sighted users do and details the access barriers that he encountered, specifically, a host of broken links that prevented Plaintiff from navigating away from dead-ends in the virtual world; missing alt. text that failed to provide any description of graphical images; missing label or title elements that failed to describe webpages; and duplicate title elements that failed to distinguish between webpages. *See* Dkt. # 1,

¶¶ 24, 25, 26, 27, 28, 29, 32.  These allegations mirror those found in *Paguada*, *Jaquez*, and *Thorne*. *See Paguada*, 2021 U.S. Dist. LEXIS 202311 at *11; *see also Jaquez*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 at *4-5; *see also Thorne*, No. 19-CV-1077, 2019 U.S. Dist. LEXIS 220080, 2019 WL 6916098 at *3.

Additionally, Plaintiff has alleged in detail the barriers that he encountered and has explained why those barriers prevented him from enjoying the website as sighted users do.  *See* Dawkins Affidavit, ¶¶ 6-11; *see also supra*, at 12-13 (detailing the nature of the barriers encountered and how they prevented Plaintiff from enjoying the Website as sighted users do). Plaintiff has clearly stated a claim.

### C.  PLAINTIFF'S NYCHRL CLAIMS SURVIVE

Even if Plaintiff's ADA claims are dismissed, Plaintiff's NYCHRL claims are judged by a different standard and survive.  This was the conclusion that the Supreme Court of New York recently came to when it stated,

> It is undisputed that the NYCHRL's pleading standards are materially looser than the trans-substantive plausibility standard of the Federal Rules of Civil Procedure— or, for that matter, the CPLR's notice-pleading standard for claims under the NYSHRL. (*See Williams v New York City Hous. Auth.*, 61 AD3d 62, 65-69, 872 N.Y.S.2d 27 [1st Dept 2009]; *Vig v NY Hairspray Co., L.P.*, 67 AD3d 140, 145, 885 N.Y.S.2d 74 [1st Dept 2009].) As a result, allegations that would be insufficient to state a federal claim might well be enough to state a cause of action under the NYCHRL. This difference defeats defendants' estoppel argument.

*Pustilnik v. Battery Park City Auth.*, 2021 NY Slip Op 21087, 71 Misc. 3d 1058, 1069, 147 N.Y.S.3d 357 (Sup. Ct.); *see also Cabrera v. City of N.Y.*, 2014 NY Slip Op 30533(U), at *6-7 (Sup. Ct.)("However, it bears noting that contrary to defendants' assertion, New York State courts, even after the decision in *Ashcroft*, have consistently applied the standards promulgated by New York State case law when confronted with a motion seeking to dismiss a cause of action pursuant to 42 USC 1983, on grounds that the complaint fails to state a cause of action.").

21

Indeed, the *Pustilnik* court, in considering whether to reject the plaintiff's NYCHRL claims on grounds of collateral estoppel after the plaintiff's ADA claims had initially been dismissed at the federal level, specifically pointed out,

> The First Department has been careful to emphasize in this context that estoppel will apply only where the federal court was deciding "strictly factual question[s] not involving application of law to facts or the expression of an ultimate legal conclusion," because these factual determinations do "not implicate any of the several ways" in which analysis of NYCHRL claims is "not identical to their federal and state counterparts."

2021 NY Slip Op 21087, 71 Misc. 3d at 1069-70.

In rejecting the defendant's collateral estoppel argument, the court noted that the federal district court's 12(b)(6) dismissal was just that, a legal determination regarding the sufficiency of the allegations that spoke more to the difference in the two pleading standards than it did to factual determinations by the court. *See Pustilnik*, 2021 NY Slip Op 21087, 71 Misc. 3d at 1070. The court explained,

> Here, on the other hand, the question for the federal district court was whether the allegations of Pustilnik's complaint could be read to raise a sufficient inference of discriminatory intent to state a cause of action. The district court held that Pustilnik's allegations did not plausibly raise the necessary inference of discrimination. (*See Pustilnik*, 2019 U.S. Dist. LEXIS 208527, 2019 WL 6598711, at *4-*8.) That holding does not resolve a strictly factual question. Rather, it is grounded in the threshold set by federal law for when plaintiffs' allegations should entitle them to proceed past the pleading stage and obtain discovery from defendants. The CPLR and the NYCHRL, on the other hand, set a different, lower threshold. As a result, the federal court's dismissal of Pustilnik's age-discrimination and disability-discrimination claims brought under federal law does not estop Pustilnik from relying on the same allegations to assert discrimination claims under the NYCHRL.

2021 NY Slip Op 21087, 71 Misc. 3d at 1070.

This Court should come to the same conclusion. "The CPLR and the NYCHRL … set a different, lower threshold." *See Pustilnik*, 2021 NY Slip Op 21087, 71 Misc. 3d at 1070. As it was in *Pustilnik*, any dismissal of Plaintiff's ADA claims necessarily involves the sufficiency of

the allegations of the Complaint under the comparatively more stringent ADA and FRCP.  As this is a legal determination, collateral estoppel would not apply to Plaintiff's NYCHRL claims and they must be preserved.  Moreover, since Defendant does not challenge the sufficiency of the allegations regarding the substantive elements of Plaintiff's ADA claims, merely mounting a 12(b)(1) challenge, any decision against Plaintiff is necessarily without prejudice, allowing Plaintiff the opportunity to refile in state court if necessary.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016)(collecting cases)("[W]here there is a lack of Article III standing, 'Article III deprives federal courts of the power to dismiss a case with prejudice.'").

### D.  PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES, CIVIL PENALTIES AND FINES UNDER NYCHRL

Plaintiff is entitled to civil penalties, fines and punitive damages under the NYCHRL.

In 2005, the New York City Council amended Administrative Code § 8-130 [a] to ensure "[t]he provisions of [the NYCHRL] shall be construed liberally … regardless of whether federal or New York state civil and human rights laws … have been so construed."  *See* N.Y.C. Administrative Code § 8-130 [a].

> Expressing concern that the NYCHRL was being too strictly construed, the amendment established that similarly worded state or federal statutes may be used as interpretive aids only to the extent that the counterpart provisions are viewed "as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise," and only to the extent that those state or federal law decisions may provide guidance as to the "uniquely broad and remedial purposes" of the local law (Local Law No. 85 [2005] of City of NY §§ 1, 7).

*Chauca v. Abraham*, 2017 NY Slip Op 08158, 30 N.Y.3d 325, 333, 67 N.Y.S.3d 85, 89 N.E.3d 475.  Applying the newly adopted standards, the Court of Appeals of New York succinctly stated,

> [T]he standard articulated in *Home Ins.* requires neither a showing of malice nor awareness of the violation of a protected right, representing the lowest threshold, and the least stringent form, for the state of mind required to impose punitive damages. By implementing a lower degree of culpability and eschewing the knowledge requirement, applying this standard adheres to the City Council's liberal

23

construction mandate while remaining consistent with the language of the statute (*see* Administrative Code § 8-502 [a]).

*Chauca*, 2017 NY Slip Op 08158, 30 N.Y.3d at 333-34.  The court concluded that this lower standard is "properly reflective of the serious and destructive nature of the underlying discriminatory conduct and the goal of deterring 'future reprehensible conduct'" and "encourages nondiscriminatory behavior and the development and application of appropriate employment criteria."  2017 NY Slip Op 08158, 30 N.Y.3d at 333-34.

Accordingly, Plaintiff's allegations of discrimination on the basis of access barriers on the Website is sufficient to indicate punitive damages, civil penalties and fines under the NYCHRL.  *See* Dkt. # 1, ¶¶ 24, 25, 26, 27, 28, 29, 32; *see also* Dawkins Affidavit, ¶¶ 10, 11.  If it were not, Plaintiff's additional allegation that it is Defendant's policy not to remediate the Website in accordance with industry-wide standards under the ADA establishes same.  *See* Dkt. # 1, ¶ 31.

## V.   **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety.

Dated:  December 15, 2022                           Respectfully Submitted,

                                                    **STEIN SAKS, PLLC**

                                                    */s/ Kenneth Willard*

                                                    Kenneth Willard, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Kenneth Willard*_____

Kenneth Willard, Esq.